UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UTICA MUTUAL INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:06CV00664 ERW |
| | ) |
| BANCINSURE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendant's Motion for Amended Case Management Order and For Expedited Trial Date [doc. #42]. A telephone conference was held on October 25, 2006 and the Court heard arguments from the parties on the Motion.

Utica filed this action for equitable contribution against BancInsure, seeking to recover a pro-rata allocation for amounts it paid on the judgment entered against Utica in a claim brought by Heartland Payment Systems, Inc. ("Heartland") against Utica and BancInsure in the Missouri Circuit Court.[1]

BancInsure's Motion for Amended Case Management Order and For Expedited Trial Date requests that this Court expedite the trial date and amend the Case Management Order to facilitate an earlier trial. This request relates to this Court's ruling on Utica's Motion for Judgment on the Pleadings. In its motion, Utica claimed that BancInsure was attempting to

---

[1] Heartland filed suit against Utica and BancInsure seeking insurance benefits for certain credit card chargebacks. Heartland and BancInsure reached a settlement agreement just prior to trial. The jury returned a verdict against Utica and in Heartland's favor, awarding Heartland $680,526.20. The trial court entered judgment in accordance with the jury's verdict and denied Utica's post-trial motions.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

relitigate the issue of whether the Utica and BancInsure insurance policies provided concurrent coverage with respect to acts of fraud. Utica argued that the Missouri Circuit Court and the Missouri Court of Appeals had already ruled on the issue, deciding that both the Utica and BancInsure policies identify and cover the same risk and that the two policies afforded the insured, Heartland, concurrent coverage with respect to acts of fraud. Utica, thus, moved this Court to enter an order giving full faith and credit to the Missouri courts' prior rulings and estopping BancInsure from relitigating the same issue before this Court. This Court found in favor of Utica on its Motion.

Utica now claims that this Court also found that the judgment amount, that the Missouri Circuit Court ordered Utica to pay to Heartland, covered losses that resulted from acts of fraud. Therefore, according to Utica, BancInsure cannot relitigate this issue and the only question that remains is the extent to which Utica has paid more than its pro-rata share. In response, BancInsure argues that although collateral estoppel prevents it from raising the issue of whether the Utica and BancInsure policies provided concurrent coverage with respect to acts of fraud, no court has previously decided what portion of Heartland's claim was for fraudulent losses. Therefore, BancInsure contends that it is not prevented from raising the issue before this Court. For the reasons that follow, the Court is persuaded by BancInsure's argument.

This Court, giving effect to the Missouri Circuit Court's ruling, determined that the BancInsure and Utica policies provided Heartland with concurrent coverage with respect to acts of fraud. It is important to note, however, that the Utica policy, unlike the BancInsure Policy,

2

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

also provided Heartland with coverage for losses, even in the absence of fraud.[2]  Because BancInsure's policy provided Heartland with coverage only for losses due to acts of fraud[3], Utica and BancInsure share a common liability on that portion of Heartland's losses alone. Consequently, in order to determine how the judgment amount is to be prorated between Utica and BancInsure, an assessment must first be made as to the extent to which the judgment amount was for Heartland's losses due to acts of fraud.  This Court has not ruled on this question.[4]  As

---

[2] The Utica Policy, denominated as a "Merchant Chargeback Indemnity Policy," provided coverage subject to the terms and conditions of the policy, for losses sustained by Heartland caused by certain covered acts of Golf Concepts, the merchant.

The Utica Policy defined a covered act as the following acts committed by a merchant:
(1) Failing to reimburse a cardholder following nondelivery of a product to such cardholder;
(2) Processing mail order transactions not authorized by the Insured;
(3) Processing telephone order transactions not authorized by the Insured;
(4) "Factoring" of "bank card" transactions;
(5) Misappropriating cardholder funds on deposit with the "merchant";
(6) Making material misrepresentations in a merchant application to the Insured;
(7) Processing "bank card" transactions not authorized by the cardholder;
(8) Using deceptive or misleading methods to solicit funds from a cardholder; or
(9) Use of counterfeit, lost or stolen credit numbers by "merchants."
*See Pl.'s Am. Compl.* Ex. 1.

The Court's review of the record reveals that Utica's attorney and employee, Micheal Shultz, testified in his deposition for the Missouri Circuit Court proceedings, that the policy coverage, under the Utica Policy, is triggered even if there is no fraud.  *See Def.'s Resp. in Opp'n to Pl.'s Mot. for J. on the Pleadings* Ex. B.  Therefore, it is possible that a portion of the judgment amount, that Utica paid to Heartland, covered losses that were not the result of fraudulent acts.

[3] The BancInsure Policy, denominated as "Plastic Card Fraud Policy for Financial Institutions," agreed to indemnify Heartland for the following: merchant fraud, merchant's customer fraud, electronic terminal fraud, telephone sales and mail-order merchant fraud, and telephone sales and mail-order merchant's customer fraud.  *See Pl.'s Mot. for Leave to File First Am. Compl.* Ex. 2.

[4] The parties' dispositive motions filed with this Court, did not raise the question of what portion of the underlying judgment, which Utica was required to pay to Heartland, was for Heartland's losses resulting from acts of fraud.  Rather, the parties discussed the Missouri Courts' previous rulings regarding Heartland's coverage under the Utica and BancInsure policies and

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

previously noted, this Court has only resolved the issue of whether collateral estoppel applies in light of the Missouri Courts' determination that the Utica and BancInsure policies provided concurrent coverage with respect to acts of fraud.

Furthermore, neither the Missouri Circuit Court nor the Missouri Court of Appeals reviewed the question of what portion of Heartland's actual losses resulted from acts of fraud. The Court of Appeals explained the circumstances surrounding Utica's failed attempt to raise this issue before the trial court:

> Heartland, [the insured] filed a pretrial motion in limine to prevent Utica from presenting any evidence that Heartland was covered by the BancInsure policy and to prevent Utica from introducing any evidence or argument that since there was concurrent coverage, Utica's policy provided coverage for only a portion of Heartland's losses. In support of its motion, Heartland claimed that because Utica was attempting to disclaim certain amounts of coverage as being concurrently covered under another policy, and because the policy issued by Utica provided coverage even in the absence of fraud on the part of Golf Concepts [the merchant], that Utica had the burden of proving which transactions and losses were the result of fraud and therefore subject to proration with the BancInsure's policy. Heartland further claimed that Utica was required to present expert testimony to show which chargebacks were the result of fraud, and that because Utica failed to designate any experts, it could not support any argument that there were losses for which there was concurrent coverage. The trial court granted Heartland's motion and sustained Heartland's trial objections to the introduction of evidence and argument of the existence of the BancInsure policy.

*Heartland Payment Systems, L.L.C. v. Utica Mutual Ins. Co.,* 185 S.W.3d 225, 230 (Mo. App. 2006). Thus, the trial court's ruling prevented Utica from presenting evidence on the issue of fraud.

Similarly, the Court of Appeals decided not to address the extent to which Heartland's losses resulted from acts of fraud. On appeal, Utica alleged that the trial court erred in: (1) ruling

---

disputed whether the full faith and credit doctrine and elements of collateral estoppel were satisfied.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that the proofs of losses were not sufficient evidence of Golf Concepts' fraud; (2) ruling that Utica was required to produce expert testimony on the issue of fraud; and (3) precluding Utica from presenting evidence of BancInsure's settlement. *Id*. at 231. In affirming the trial court's ruling, the Court of Appeals declined to examine the viability of Utica's claim. The court reasoned that it was "primarily concerned with the correctness of the trial court's result" and thus, did "**not reach Utica's specific allegations of trial-court error.**" *Id*. at 232 n.12 (emphasis added).

Accordingly, the Court concludes that neither this Court nor any Missouri Court has reviewed the question of what amount of the judgment against Utica was for Heartland's losses resulting from acts of fraud. Therefore, for the purpose of determining the extent to which Heartland's losses are subject to proration between Utica and BancInsure, the Court finds that BancInsure is not precluded from raising the issue before this Court.

With respect to BancInsure's Motion, the Court declines BancInsure's invitation to amend the Case Management Order and expedite the trial date.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant BancInsure's Motion to Amend Case Management Order and for Expedited Trial Date [doc. #42] is **DENIED**.

**IT IS FURTHER ORDERED** that the deadlines set forth in this Court's Case Management Order remain the same.

Dated this 31st day of October, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com